EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gran Vista I, Inc.<br><br> Demandante-Recurrida<br><br>v.<br><br>Minerva Gutiérrez Santiago,<br>John Doe ambos por sí y en<br>Representación de la S/L/G<br>Constituída entre ellos<br><br> Demandada-Peticionaria | Certiorari<br><br>2007 TSPR 20<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2003-387

Fecha: 2 de febrero de 2007

Tribunal de Apelaciones:

> Región Judicial VI- Caguas/Humacao/Guayama

Juez Ponente:

> Hon. Frank Rodríguez García

Abogado de la Parte Peticionaria:

> Por Derecho Propio

Abogado de la Parte Recurrida:

> Lcdo. Carlos A. Mercado Rivera

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gran Vista I, Inc.

   Demandante-Recurrida

        v.                            CC-2003-387

Minerva Gutiérrez Santiago,
John Doe ambos por sí y en
representación de la S/L/G
constituída entre ellos

   Demandada-Peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 2 de febrero de 2007.

El presente caso requiere que determinemos si actuó correctamente el Tribunal de Circuito de Apelaciones al desestimar el recurso de apelación presentado por la peticionaria por ésta haber omitido incluir los sellos de rentas de internas requeridos por ley para presentar una apelación.

La peticionaria sostiene que por carecer de los medios económicos para sufragar el costo de dichos aranceles, cumplimentó una solicitud para presentar su apelación en *forma pauperis* según lo permitía la Regla 78 del entonces vigente Reglamento del Tribunal de Circuito de Apelaciones de 1996. Sostiene además que de determinar que no procedía permitirle

litigar en *forma pauperis*, el tribunal debió permitirle cancelar el arancel de presentación, en lugar de desestimar su recurso.

A la luz de estos hechos, resolvemos que erró el tribunal apelativo al desestimar el recurso de apelación presentado por la peticionaria.

**I.**

Una vez más, nos enfrentamos a una controversia que requiere que hagamos un balance de intereses entre el deber de salvaguardar el derecho de apelar que nuestro ordenamiento le reconoce a todo litigante adversamente afectado por una sentencia y el interés del Estado en que los procesos judiciales se tramiten de forma justa, rápida y económica. *Véase Soc. de Gananciales v. García Robles*, 142 D.P.R. 241 (1997).

En primer lugar, al resolver esta controversia debemos tomar en cuenta que la aprobación de la Ley de la Judicatura de 1994 tuvo como propósito proveer justicia apelativa a todos los ciudadanos adversamente afectados por las decisiones de un tribunal inferior.[1] En segundo lugar,

---

[1] Como cuestión de umbral, debemos aclarar que los hechos del presente caso se desarrollaron mientras estaba vigente la Ley de la Judicatura de 1994. Por lo tanto, en nuestra discusión haremos alusión a dicho estatuto. Sin embargo, es meritorio señalar que la Ley de la Judicatura de 2003, Ley núm. 20 de 22 de agosto de 2003, reitera la importancia de garantizar que las controversias se resuelvan en los méritos. A estos efectos, el artículo 4.002 de la Ley de la Judicatura de 2003, dispone que el Tribunal Apelativo "[d]eberá ofrecer acceso fácil, económico y efectivo a sus procedimientos, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos". 4 L.P.R.A. sec. 24u. Además, el

debemos sopesar el interés de que los ciudadanos cumplan estrictamente con las normas y reglamentos aplicables al perfeccionamiento de los recursos apelativos, frente a la importancia de que las normas procesales no se apliquen de forma rígida e inflexible de forma tal que priven a un litigante de su derecho a ventilar su causa de acción en nuestros tribunales. Finalmente, debemos tener en cuenta el principio que ha guiado nuestras decisiones, que permea la Ley de la Judicatura de 1994 y favorece que los casos se ventilen en los méritos. *Véase* I*d.* Veamos los hechos del presente caso.

## II.

El 23 de enero de 2003, el Tribunal de Primera Instancia, Sala Municipal de Gurabo, dictó sentencia sumaria en la que declaró con lugar una demanda en cobro de dinero presentada por la demandante-recurrida, la Asociación de Residentes Gran Vista I, Inc. ("Gran Vista I"), en contra de la peticionaria, la licenciada Minerva Gutiérrez (la "peticionaria"), su esposo y la Sociedad

---

artículo 4.004 de la Ley de la Judicatura de 2003 establece que el reglamento interno del Tribunal de Apelaciones deberá adoptar:

> reglas dirigidas a reducir al mínimo el número de recursos desestimados por defectos de forma o de notificación, reglas que provean oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes, y reglas que permitan la comparecencia efectiva de apelantes por derecho propio y en forma pauperis. 4 L.P.R.A. sec. 24w.

Legal de Gananciales compuesta por ambos.[2] En su demanda, Gran Vista I reclamó de los esposos, co-propietarios de una vivienda en la urbanización Gran Vista I, el pago de cuotas de mantenimiento atrasadas. La peticionaria compareció por derecho propio en dicho pleito y, entre otros documentos, presentó contestación a la demanda en la cual incluyó los correspondientes aranceles de presentación.

El 26 de febrero de 2003, luego de que el tribunal de instancia dictara sentencia en su contra, la peticionaria presentó un recurso de apelación ante el entonces denominado Tribunal de Circuito de Apelaciones.[3] Al momento de presentar su recurso de apelación, la peticionaria cumplimentó una "Declaración en apoyo de solicitud para litigar como indigente" (in forma pauperis). Indicó en dicha declaración jurada que por su situación económica estaba imposibilitada de pagar los derechos y aranceles correspondientes a su escrito de apelación. Alegó además que sus ingresos mensuales fluctuaban entre los $300 y $700 y que era propietaria de un inmueble residencial. Entre sus deudas, adujo que pagaba $1,500.00 mensuales de

---

[2] El Tribunal de Primera Instancia ordenó a los esposos demandados a pagar $7,060.16 por concepto de cuotas de mantenimiento adeudadas y $700.00 por concepto de gastos, costas y honorarios de abogados.

[3] A raíz de una "Moción de reconsideración urgente de fecha de notificación de archivo en autos por la de notificación real" presentada por la peticionaria ante el Tribunal de Primera Instancia, dicho tribunal notificó, el 20 de febrero de 2003, que la fecha de la notificación de la sentencia era el 13 de febrero de 2003 y que en dicha fecha comenzó a correr el término para apelar.

hipoteca y que el pago mensual de su automóvil era de $259.00.[4]

El 28 de febrero de 2003, la peticionaria presentó una moción informativa ante el tribunal apelativo en la que solicitó que dicho foro dispusiera conforme a derecho en cuanto al arancel de presentación. Por su parte, el Tribunal de Circuito de Apelaciones emitió una resolución el 18 de marzo de 2003 en la que desestimó el recurso de apelación presentado por la peticionaria. En su resolución, dicho foro apelativo determinó que la allí apelante percibía ingresos de $2,226.00 y era co-propietaria de la casa en que reside, por lo que no podía ser considerada como litigante indigente. Indicó además que la peticionaria no había litigado como indigente ante el tribunal de instancia pues había pagado los aranceles de presentación en su contestación a la demanda. Debido a que la peticionaria no había pagado e adherido los correspondientes sellos de rentas internas en su recurso de apelación, el Tribunal de Circuito de Apelaciones determinó que no tenía jurisdicción para atender el mismo.

Oportunamente, la peticionaria presentó una moción de reconsideración en la que alegó que al momento de presentar su recurso de apelación cumplimentó la solicitud para litigar en *forma pauperis* porque no tenía el sello

---

[4] Además, del estimado de gastos mensuales provisto por la peticionaria por concepto de comida, ropa, agua, luz, teléfono y transportación, se deduce que éstos fluctúan entre $600.00 y $850.00 mensuales.

correspondiente.      Indicó    que    su    ingreso    de    $2,226.00
correspondía a una pensión alimentaria para tres hijos de
los cuales sólo le sobraban $766.00 luego del pago de su
hipoteca.    Solicitó, como medida correctiva, que dicho foro
apelativo le concediera tiempo razonable y oportunidad para
cancelar el arancel de forma tal que su caso se pudiese
considerar en los méritos.    El 11 de abril de 2003, el
Tribunal de Circuito de Apelaciones declaró no ha lugar la
reconsideración  e  indicó  que  la  peticionaria  no  había
litigado  como  indigente  ante  el  Tribunal  de  Primera
Instancia y que la moción reconsideración no aducía causa
ni fundamento que le permitiese alterar su dictamen previo.

Inconforme    con    la    determinación    del    tribunal
apelativo, el 21 de mayo de 2003, la peticionaria acudió
ante nosotros mediante recurso de *certiorari*.    El 11 de
julio de 2003, lo declaramos no ha lugar.    El 29 de agosto
de 2003 reconsideramos nuestro dictamen y ordenamos a la
Secretaría del Tribunal de Circuito de Apelaciones a elevar
los autos originales o copia certificada de los mismos en
el  presente  caso.  El  2  de  octubre  de  2003,  la  parte
recurrida acudió ante nosotros y solicitó la desestimación
del recurso.[5]    El 17 de octubre de 2003, declaramos dicha
moción no ha lugar.    Finalmente, la peticionaria presentó
su alegato el 22 de diciembre de 2003.

---

[5] La  parte  recurrida  alegó  que  el  recurso  no  se  había
perfeccionado porque el apéndice no contenía los documentos
del caso presentados en el Tribunal de Primera Instancia.

En el ínterin, el 30 julio de 2003, la peticionaria presentó una moción de relevo de sentencia ante el Tribunal de Primera Instancia en la que alegó que el asunto objeto del presente caso había sido adjudicado de forma adversa a la parte recurrida por el Tribunal de Circuito de Apelaciones en el caso Gran Vista I. vs. Luis G. Gómez Ortiz, KLAN 200300173.[6] El 22 de septiembre de 2003, el tribunal de instancia determinó que era improcedente la moción de relevo de sentencia por estar pendiente el recurso ante este Tribunal y por haber transcurrido más de seis meses desde que se notificó la sentencia en el caso. Sobre esa determinación acudió la peticionaria en recurso de *certiorari* al Tribunal de Circuito de Apelaciones. El 20 de enero de 2004, dicho foro desestimó el recurso por haberse presentado tardíamente.[7]

El 1ro de abril de 2004, la parte recurrida compareció ante nosotros. Alegó que procedía desestimar el recurso pues entendía que la peticionaria mantenía de forma impermisible dos procesos paralelos en su contra por los mismos hechos. El 15 de junio de 2004, la peticionaria presento moción en auxilio de jurisdicción en la cual

---

[6] Alegó la peticionaria que había impedimento colateral por sentencia y que procedía relevarla de los efectos de la sentencia dictada en su contra por el tribunal de instancia en el presente caso.

[7] El 18 de febrero de 2004, la peticionaria presentó una moción de reconsideración, inhibición y anulación de resolución que fue declarada no ha lugar el 18 de marzo de 2004. Posteriormente, el 27 de abril de 2004, el tribunal de apelaciones declaró no ha lugar la moción de reconsideración sobre la resolución en cuanto a la inhibición y anulación.

solicitó nuevamente que le permitiéramos litigar en forma *pauperis* ante los tribunales del país. El 21 de junio de 2004, le concedimos a la parte recurrida un término de 20 días para que presentara su alegato. El 23 de julio de 2003, sin contar con el alegato de la parte recurrida, quedó sometido el caso ante nosotros.

Estando en posición de hacerlo, procedemos a resolver.

**III.**

**A.**

Nuestro ordenamiento procesal apelativo reconoce el derecho de todo ciudadano a que un tribunal de superior jerarquía revise, como cuestión de derecho, las sentencias dictadas por los tribunales inferiores. Este derecho a invocar la jurisdicción de un tribunal apelativo es puramente estatutario, por lo que depende de que la Asamblea Legislativa lo reconozca. *Vázquez Suárez v. Rivera*, 69 D.P.R. 947, 949 (1949); R. Hernández Colón, Manual de derecho procesal civil, 2da ed. Equity Publishing Corp. 1989, sec. 4603, pág. 314. Tratándose de un derecho estatutario, el legislador puede prescribir las formas en que los litigantes podrán ejercer su derecho a apelar. *Padilla v. García*, 61 D.P.R. 734 (1943); *Reyes v. Delgado*, 81 D.P.R. 937, 942-43 (1960). Por otro lado, el derecho a apelar una sentencia no es automático, pues presupone un diligenciamiento y su perfeccionamiento.

La Ley de la Judicatura de 1994, vigente al momento en que se dilucidó este caso, reconoció el derecho de todo

ciudadano a presentar recursos de apelación. Uno de los propósitos que propulsó la aprobación de dicho estatuto fue "[c]onceder el derecho de apelación a los ciudadanos en casos civiles y criminales, extendiéndose a todo puertorriqueño afectado adversamente por una decisión de un tribunal de derecho a que un panel apelativo de un mínimo de tres jueces revise esa decisión." Exposición de motivos de la Ley de la Judicatura de Puerto Rico de 1994, Ley núm. 1(a) de 28 de julio de 1994. 1994 L.P.R.A. págs. 2800-2803. Al interpretar dicho estatuto, hemos establecido que uno de sus propósitos fue ampliar el acceso de los litigantes a los tribunales apelativos y asegurar que todo litigante tenga la oportunidad de que un tribunal colegiado revise las sentencias de los tribunales inferiores. *Soc. de Gananciales v. García Robles*, *supra*; *Pueblo v. Santana Vélez*, res. 22 de mayo de 2006, 168 D.P.R. __, 2006 TSPR 86.

En aras de cumplir el mandato establecido por la Ley de la Judicatura de 1994, aprobamos el Reglamento del Tribunal de Circuito de Apelaciones de 1996. Dicho Reglamento, vigente al momento en que el Tribunal de Circuito de Apelaciones resolvió el presente caso, reiteró la importancia de facilitar el acceso a los tribunales y salvaguardar el derecho de toda persona a presentar un recurso de apelación. *Véase* Regla 2, Reglamento del Tribunal de Circuito de Apelaciones de 1996.

**B.**

Los requisitos aplicables al perfeccionamiento de un recurso de apelación están contenidos en el Reglamento del Tribunal de Apelaciones de 1996, la Ley de la Judicatura de 1994, *supra*, y en las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III.

En reiteradas ocasiones hemos establecido que los litigantes deben observar rigurosamente las disposiciones reglamentarias sobre el perfeccionamiento de los recursos ante este Tribunal y ante el tribunal apelativo intermedio. *Arriaga v. F.S.E.* 145 D.P.R. 122, 130-31 (1998); *Pellot Ferrer v. Avon Mirabella,* res. 7 de agosto de 2003, 2003 TSPR 131, 159 D.P.R. __; *Rodríguez v. Sucn. Martínez*, 151 D.P.R. 906, 913 (2000); *Cárdenas Maxán v. Rodríguez*, 119 D.P.R. 642, 659 (1987). Esta exigencia de cumplimiento riguroso con las formalidades sobre los recursos de apelación responde al principio de que no podemos dejar "al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo…". *Arriaga v. F.S.E. supra* pág. 130 *citando a Matos v. Metropolitan Marble Corp.*, 104 D.P.R. 122, 125 (1975). No empece lo anterior, hemos dispuesto que este principio "no implica una adhesión inflexible a las disposiciones reglamentarias." *Rodríguez v. Sucn. Martínez*, *supra*.

En caso de incumplimiento con las formalidades y procedimientos requeridos para presentar un recurso de apelación, la Regla 83(c) del Reglamento del Tribunal de

Apelaciones de 1996 permitía que dicho foro desestimara un recurso de apelación que no se hubiese perfeccionado conforme a la ley. *Véase además* Regla 53.1(1) de las Reglas de Procedimiento Civil 32 L.P.R.A. Ap. III. Sin embargo, en virtud del interés de que los casos se consideren en los méritos, hemos establecido que la sanción de desestimación de una apelación debe utilizarse como último recurso. *Román et als. v. Román et als.*, 158 D.P.R. 163, 167 (2002); *Salinas v. Alonso Estrada*, res. 13 de noviembre de 2003, 2003 TSPR 165, 160 D.P.R.__. De igual modo, no todo incumplimiento con los requisitos de forma para perfeccionar el recurso ameritan la desestimación del mismo.

Al resolver controversias sobre incumplimiento con disposiciones del Reglamento del foro apelativo intermedio, hemos establecido que dicho foro debe ser flexible en la aplicación de su reglamento cuando se trata de un mero requisito de forma de menor importancia, *Santos y otros v. Mun. de Comerío*, 140 D.P.R. 12 (1996), o cuando se ha impuesto la sanción de la desestimación sin antes haber apercibido a la parte debidamente, *López Rivera v. Rivera Díaz, 141 D.P.R. 194 (1996)*; Arriaga *v. F.S.E., supra*, pág. 130.

En *López Rivera v. Rivera Díaz, supra,* determinamos que el Tribunal de Circuito de Apelaciones no debió aplicar la drástica sanción de la desestimación ante la dilación de la parte peticionaria en obtener la aprobación de la

exposición narrativa de la prueba. En dicho caso resolvimos que el foro apelativo debió haber apercibido a la peticionaria de su intención de desestimar el recurso. *López Rivera v. Rivera Díaz, supra,* págs. 197-98.

Así mismo, en *Soc. de Gananciales v. García Robles*, resolvimos que el foro apelativo había abusado de su discreción al desestimar un recurso de apelación por la omisión del apelante de elevar la prueba testifical presentada en el foro primario. *Soc. de Gananciales v. García Robles, supra*, págs. 260-61. Amparados en la discreción que tiene todo tribunal al implementar sus normas procesales y en la norma que favorece que los casos se ventilen en los méritos, determinamos que antes de desestimar el recurso, el Tribunal de Circuito de Apelaciones debió haber apercibido a la parte de su omisión para que ésta tomase la correspondiente acción correctiva. *Id*. pág. 260.

En vista de la normativa antes reseñada, reiteramos que a pesar de que el tribunal apelativo cuenta con discreción para desestimar los recursos de apelación que no se perfeccionan conforme lo exigen las normas aplicables, no podemos permitir que la aplicación inflexible y automática de estos requisitos prive a un litigante de su derecho de acceso a la justicia y frustre el principio rector de favorecer que los casos se ventilen en los méritos.

A la luz de lo anterior, procedemos a analizar el requisito de incluir en todo escrito judicial el arancel de presentación requerido por ley y el efecto que el incumplimiento con dicho requisito debe tener en un caso en el que la parte solicita presentar una apelación en *forma pauperis.*

**IV.**

**A.**

Entre las condiciones dispuestas en nuestro ordenamiento para perfeccionar un recurso de apelación se encuentra el pago de los aranceles de presentación. Por lo tanto, como requisito de umbral para invocar la jurisdicción del foro apelativo, todo apelante debe pagar dichos aranceles y adherir los sellos a su recurso.

El requisito de pagar los correspondientes aranceles de presentación y de adherir los sellos de rentas de internas a todo escrito judicial busca cubrir los gastos asociados a los trámites judiciales. A estos efectos, dispone nuestro Código de Enjuiciamiento Civil que el propósito del pago de un arancel de derechos es cubrir "las operaciones de los secretarios y alguaciles de los tribunales." 32 L.P.R.A. § 1477. En el caso de todo escrito de apelación civil o de *certiorari* presentando ante el Tribunal de Apelaciones, el Código de Enjuiciamiento Civil exige que se pague un arancel de $50.00. *Id.*

Sobre la validez de un documento judicial en el que no se adhieren los sellos de rentas internas, la Ley núm. 17

de 11 de marzo de 1915 establece que serán nulos todos los documentos judiciales que por dicha ley deben llevar sellos de rentas internas, a menos que éstos se adhieran a los referidos documentos judiciales.  32 L.P.R.A. § 1481.  En repetidas ocasiones hemos establecido que es nulo e ineficaz un escrito judicial al cual no se le han adherido los correspondientes sellos de rentas internas.  *Meléndez v. Levitt & Sons. Of P.R., Inc.,* 106 D.P.R. 437, 438 (1977); *Maldonado v. Pichardo*, 104 D.P.R. 778, 781-82 (1976); *González v. Jiménez*, 70 D.P.R. 165 (1949); *Vázquez Suárez v. Rivera*, 69 D.P.R. 947, 951 (1949); *Piñas v. Corte Municipal*, 61 D.P.R. 181, 184 (1942); *Nazario v. Santos, Juez Municipal*, 27 D.P.R. 89 (1919).

La sanción de nulidad de todo documento judicial que no tenga adherido el correspondiente sello de rentas internas persigue evitar fraudes al erario público.  *Salas v. Baquero*, 47 D.P.R. 108, 113-14 (1934).  Sin embargo, siendo el Pueblo de Puerto Rico la parte verdaderamente afectada en todo caso en que un litigante omite pagar y adherir a sus escritos los sellos requeridos por ley, hemos reconocido instancias en las que dicha omisión no conlleva la nulidad *ab initio* del documento.

En *Salas v. Baquero* expresamos que "si el propósito de la ley es proteger los derechos del estado y evitar fraudes al erario público, no parece lógico que una vez cubiertos los derechos, una parte que en nada se perjudica pueda aprovecharse del error alegando que la actuación judicial

es nula de su origen." *Id*. pág. 114.  Por lo tanto, resolvimos en dicha ocasión que es anulable un documento en el que un funcionario judicial, inadvertidamente, sin intervención de la parte y sin intención de defraudar, deja de cancelar un sello o cancela una cantidad menor. Determinamos entonces que un error de esa naturaleza puede subsanarse por la parte a quien corresponde el pago del arancel.[8] *Id*.

En igual sentido, en *Lawyers Cooperative Publishing Co. v. Corte*, 51 D.P.R. 465 (1937), clarificamos que toda persona que impugne la validez de un documento judicial por ausencia de sellos de rentas internas sólo tiene que probar que el escrito carece de éstos.  Corresponde entonces a la parte que omitió adherir el sello, justificar su omisión y "demostrar que ello se debió a un error o por inhabilidad de obtenerlo." *Id*. pág. 468.  Además, corresponde a la parte que deja de incluir el sello, presentar un caso *prima facie* de buena fe, mediante un affidávit de méritos o prueba a esos efectos. *Id*. pág. 469.

De lo anterior se desprende que, en ausencia de fraude o colusión, nos hemos negado a invalidar documentos judiciales y desestimar apelaciones por insuficiencia de sellos de rentas internas cuando por error del secretario

---

[8] En *Córdova Montes*, 47 D.P.R. 108 (1934), nos negamos a invalidar un proceso de ejecución de hipoteca porque el alguacil dejó de cancelar $ 0.25 en sellos de rentas internas por cada milla corrida al practicar la diligencia o notificación.  Determinamos que el alguacil había cancelado $3.00 en sellos, cantidad que era suficiente para cubrir los derechos exigidos por ley.

del tribunal se fija como importe una suma menor a la requerida o cuando por instrucciones de dicho funcionario, la parte deja de incluir los sellos. *Cintrón v. Yabucoa Sugar Co.,* 52 D.P.R. 402 (1937); *Salas v. Baquero*, *supra*.

**B.**

Habiendo establecido que la omisión de incluir los aranceles de presentación en un documento judicial no conlleva la nulidad automática del escrito, nos resta considerar el efecto que dicha normativa tiene en un caso en el que la parte solicita litigar con el beneficio de insolvencia ante el tribunal apelativo.

Comenzamos por indicar que no hay un derecho constitucional a presentar una apelación en *forma pauperis*. *Padilla v. García, supra*, pág. 735. Por lo tanto, es necesario que un estatuto reconozca este derecho expresamente.

Los estatutos aprobados con el fin de permitir la litigación en *forma pauperis* cumplen el propósito de abrir las puertas de los tribunales a todos los ciudadanos, no empece la incapacidad económica de algunos para sufragar los costos asociados a un litigio. Por lo tanto, el litigante que obtiene un permiso para tramitar su caso en *forma pauperis*, está exento de pagar los aranceles o derechos de presentación requeridos por ley.

Tanto en casos de índole criminal, como en casos de litigación civil, hemos expresado que para poder litigar en *forma pauperis,* el solicitante "no viene obligado a

demostrar que es absolutamente insolvente, desamparado, y sin medios de vida.    Más bien[,] el requisito es que por razón de pobreza no pueda pagar los derechos." *Camacho v. Corte*, 67 D.P.R. 802, 804 (1947); *Pueblo v. Castro*, 69 D.P.R. 450, 455(1948).    Le corresponde al solicitante demostrar su insolvencia, pues la concesión del privilegio de litigar con el beneficio de insolvencia debe interpretarse estrictamente.    *Camacho v. Corte, supra* pag.805.

Entre los costos que un litigante debe soportar para perfeccionar un recurso de apelación, está el pago de los aranceles de presentación.    En este aspecto, expresamos en *Vázquez Suárez* que "el requerir la cancelación de sellos de rentas internas en un escrito de apelación no menoscaba derechos de clase alguna, no suspende el ejercicio de tal derecho, no viola ningún precepto de nuestra Carta Orgánica." *Vázquez Suárez v. Rivera, supra*, pág.951.

La sección 7 del Código de Enjuiciamiento Civil reconoce el derecho estatutario de los indigentes a litigar en *forma pauperis*; libre del pago de las costas de un pleito.    32 L.P.R.A. sec. 1482.    Dicha sección dispone:

> Cualquier persona de Puerto Rico que desee entablar una acción civil o recurso y no pudiere pagar los derechos requeridos por las secs. 1476 a 1482 de este título podrá presentar al secretario una declaración jurada exponiendo su imposibilidad de pagar dichos derechos, juntamente con una copia de la demanda que se propone deducir, y el secretario someterá dicha declaración jurada y la referida demanda o recurso al juez del tribunal; y si dicho juez juzgare suficiente en derecho la demanda permitirá que se anote dicha demanda, por lo cual

el demandante tendrá derecho a todos los servicios de todos los funcionarios del tribunal y a todos los mandamientos y providencias del mismo, como si los derechos hubiesen sido satisfechos.

…

Mas, en todo caso, el juez podrá requerir cualquier información adicional que creyere necesaria cuando una persona solicita que se le releve del pago de costas. *Los recursos a nivel apelativo o discrecionales que se presenten en el Tribunal de Circuito de Apelaciones o en el Tribunal Supremo disfrutarán de la referida exención de conformidad al trámite dispuesto.* Id. (Énfasis suplido).

Como salvaguarda al derecho de todo litigante a recurrir a los tribunales apelativos, la Regla 78 del Reglamento del Tribunal de Circuito de Apelaciones de 1996, permitía que los litigantes indigentes solicitaran el derecho a litigar *in forma pauperis* ante dicho foro apelativo. A estos efectos, la regla 78 del referido Reglamento disponía lo siguiente:

[c]ualquier parte en el procedimiento que por primera vez solicite litigar in forma pauperis, presentará ante el Tribunal de Circuito de Apelaciones una declaración jurada, en la cual expondrá los hechos que demuestren su incapacidad para pagar los derechos y costas o para prestar garantía por éstos; su convencimiento de que tiene derecho a un remedio; y una exposición de los asuntos que se propone plantear en apelación. Si la solicitud se concede, la parte podrá litigar sin el pago de derecho y costas, o sin la presentación de fianza para ello. Énfasis suplido. *Id.*[9]

---

[9] Es importante puntualizar que esta disposición se mantuvo vigente en el Reglamento Transitorio del Tribunal de Apelaciones del 2003 y en el hoy vigente Reglamento del 2004. Actualmente, la Regla 78 del Reglamento del Tribunal de Apelaciones de 2004 dispone que:

Cualquier parte en el procedimiento que por primera vez solicite litigar in forma pauperis, presentará ante el Tribunal de Apelaciones una declaración jurada, en la cual expondrá los hechos que demuestren su incapacidad para pagar

De lo anterior se desprende que, conforme a nuestro Código de Enjuiciamiento Civil y al Reglamento del tribunal apelativo, el ciudadano que tenga una reclamación meritoria y que por su condición económica esté impedido de sufragar los costos de un litigio, puede solicitar el beneficio de litigar en *forma pauperis*, tanto al presentar su acción, como al apelar una sentencia.  Para obtener la referida exención del pago de costas, el solicitante debe presentar una declaración jurada en la que acredite su incapacidad económica.  El secretario o funcionario judicial que reciba la solicitud para litigar en *forma pauperis* debe remitirla a un juez.  El juez, luego de evaluar tanto la condición económica del solicitante, como los méritos de su reclamación, determinará entonces si procede conceder el privilegio de litigar en *forma pauperis*.

En resumen, al examinar una solicitud para litigar en *forma pauperis*, el tribunal tiene discreción para determinar si el solicitante carece de medios económicos para pagar los gastos del pleito y si su reclamación es meritoria.  Por lo tanto, la decisión sobre la procedencia de una solicitud para litigar como indigente, no debe ser

---

los derechos y costas o para prestar garantía por éstos; su convencimiento de que tiene derecho a un remedio; y una exposición de los asuntos que se propone plantear en el recurso.
Si la solicitud se concede, la parte podrá litigar sin el pago de derecho y costas, o sin la prestación de fianza para ello.
El Tribunal de Apelaciones podrá preparar formularios para facilitar la comparecencia efectiva de apelantes o recurrentes en forma pauperis.  4 L.P.R.A. Ap. XXII-B R. 78.

alterada en apelación a menos que el récord demuestre que el tribunal abusó de su discreción. *Pueblo v. Castro*, 69 D.P.R. 450, 452 (1948). (citas omitidas).

A pesar de que esta es la primera ocasión en la que analizamos el procedimiento a seguir ante el tribunal apelativo para presentar una solicitud para litigar en *forma pauperis*, hemos tenido la oportunidad de atender controversias relacionadas a solicitudes para litigar en *forma pauperis* en los tribunales de instancia y el efecto que la concesión de dicho permiso tiene en los trámites apelativos.

En *Vázquez Suárez v. Rivera* indicamos que, en nuestra jurisdicción, el litigante que cumpla con los requisitos establecidos en la ley, puede litigar en *forma pauperis* tanto al presentar su solicitud en el tribunal inferior, como al apelar ante nosotros. *Vázquez Suárez v. Rivera*, *supra*, pág. 950. De igual modo, en *Torres v. Rivera*, 70 D.P.R. 59, 61 (1949) resolvimos, bajo el Código de Enjuiciamiento Civil de 1933, que un litigante que obtuvo una resolución permitiéndole litigar en *forma pauperis*, tiene derecho a presentar un escrito de apelación sin el pago de los derechos de rentas internas fijados por la ley. *Parrilla v. Loíza Sugar Co.,* 49 D.P.R. 597 (1936); *Rosado v. American Railroad Co.*, 37 D.P.R. 623 (1928).

Por otro lado, en *Vázquez Suárez v. Rivera, supra*, al examinar una controversia sobre la omisión de incluir los sellos de rentas internas en un documento judicial,

resolvimos que, en ausencia de una petición para litigar en *forma pauperis*, procedía desestimar un recurso de apelación en el que no se habían adherido los referidos derechos y aranceles de presentación. Así mismo, en *Padilla v. García*, *supra*, desestimamos una apelación por no haberse presentado una trascripción del récord. En dicha ocasión resolvimos que, en ausencia de una orden del tribunal apelado en la cual se acreditara la insolvencia de la apelante o se ordenara al taquígrafo la entrega de una trascripción libre de derechos, la apelante no había perfeccionado su recurso y procedía desestimarlo. *Padilla v. García*, *supra*, pág. 737.

En dichos casos, sin embargo, nos enfrentamos a situaciones en las que la parte **no había solicitado litigar en *forma pauperis*, ni había obtenido un permiso para así hacerlo.** No estaba ante nuestra consideración una situación como la presente en la que el litigante omitió incluir los sellos de rentas internas porque solicitó tramitar su apelación en *forma pauperis*.

Con este marco doctrinal en mente, pasamos a analizar los hechos de caso ante nuestra consideración.

**V.**

En el presente caso, la peticionaria siguió el procedimiento dispuesto en el Reglamento del Tribunal de Apelaciones de 1996 para solicitar litigar libre del pago de las costas del pelito. Alegó que por recomendación del personal de la Secretaría del foro apelativo intermedio,

cumplimentó y juramentó una declaración en apoyo a solicitud para litigar como indigente. Posteriormente, presentó una moción informativa en la que solicitó que el tribunal apelativo dispusiera sobre el arancel conforme a derecho. Sin embargo, luego de vencido el término para perfeccionar su recurso de apelación y sin proveerle oportunidad de presentar los sellos, el Tribunal de Circuito de Apelaciones dictó resolución en la cual desestimó el mismo. Determinó que por recibir ingresos de $2,226.00 mensuales y ser co-propietaria de un inmueble, la peticionaria no podía litigar como indigente. En ausencia de prueba de que la peticionaria había litigado en *forma pauperis* ante el Tribunal de Primera Instancia, el foro apelado resolvió que procedía desestimar el recurso en controversia por incumplimiento con el requisito de adherir los correspondientes aranceles de presentación.

En atención al interés de que las controversias se diluciden en los méritos y al principio que desfavorece imponer la sanción de la desestimación como primer recurso, resolvemos que erró el tribunal apelativo al desestimar el recurso de la peticionaria sin proveerle la oportunidad de subsanar su omisión.

Habiendo aseverado la peticionaria que omitió incluir el sello de rentas internas por no tener la capacidad económica para pagarlo al momento de presentar el recurso y ante la realidad de que el Reglamento del Tribunal de Circuito de Apelaciones disponía que una parte podía

cumplimentar una solicitud para presentar una apelación en *forma pauperis*, entendemos que en este caso, el omitir presentar los sellos era un defecto que hacía que el recurso presentado fuera anulable. *Véase Salas v. Baquero, supra*. Por tanto, la peticionaria podía subsanar dicho defecto oportunamente.

Al determinar que la peticionaria no era indigente, el foro apelativo debió proveerle un término razonable para cumplir con el requisito de presentar los sellos de rentas internas correspondientes a un recurso de apelación. El hecho de que la peticionaria no hubiese litigado en *forma pauperis* ante el foro primario no implica que su recurso era nulo por no haberse incluido el sello de rentas internas. Esto, debido a que el propio Reglamento del Tribunal de Circuito de Apelaciones le permitía solicitar permiso para litigar en *forma pauperis*, sin necesidad de demostrar que había litigado en tal calidad ante el tribunal de instancia.

No cuestionamos que el tribunal apelativo tenía discreción para determinar si la peticionaria era o no indigente.[10] Sin embargo, entendemos que ante los hechos

---

[10] Coincidimos con el tribunal apelativo en su determinación de que, con un salario de $2,226.00 mensuales, la peticionaria, co-propietaria de un inmueble y abogada de profesión que estaba litigando por derecho propio, no podía ser considerada indigente a los efectos de eximirla del pago del arancel de presentación de $50.00. A modo ilustrativo, señalamos que bajo los criterios del Reglamento para la asignación de abogados o abogadas de oficio en procedimientos de naturaleza penal, la peticionaria no podría ser considerada indigente para recibir los servicios de un abogado de oficio. 4 L.P.R.A.

del presente caso, no procedía desestimar de forma automática el recurso de apelación de la peticionaria. Avalar la acción del tribunal apelativo implicaría permitir que, de decidir el tribunal que no procede conceder el privilegio de litigar en *forma pauperis*, el solicitante estaría expuesto a perder su derecho a apelar. Habida cuenta de que el permiso para litigar en *forma pauperis* no se concede de forma automática, no podemos imponer la sanción de la desestimación si, posteriormente, el tribunal decide que el litigante no es indigente.

En ausencia de fraude o colusión de la peticionaria quien, según obra en el récord, siguió el trámite que se le indicó en la secretaría del tribunal para perfeccionar su recurso libre del pago de los aranceles de presentación, y posteriormente solicitó que el tribunal determinara si debía cancelar el sello de rentas internas, resolvemos que no procedía desestimar su apelación.

Al así resolver, no le estamos abriendo las puertas a litigantes inescrupulosos que, so pretexto de solicitar el beneficio de insolvencia, incumplan con el requisito de pagar y adherir los sellos de rentas internas según lo exige la ley. **Es deber de los litigantes pagar los**

_____

Ap. XXVIII. En el presente caso, la peticionaria indicó que tiene tres hijos por lo que su núcleo familiar es de cuatro personas, incluyéndola a ella. Según el Reglamento antes mencionado, el ingreso máximo permitido para una persona cuya familia consta de cuatro personas es de $1,371.00 mensuales. *Id*. R. 35. Por lo tanto, tomando en cuenta su ingreso de $2, 226.00 mensuales, la peticionaria no podía ser considerada indigente bajo los niveles máximos de ingresos dispuestos en el Reglamento para la asignación de abogados o abogadas de oficio.

**derechos correspondientes para perfeccionar sus recursos.** Sin embargo, en el presente caso existen circunstancias de peso que militan en contra de imponer la severa sanción de la desestimación que hemos establecido debe ser un recurso de última instancia.

## VI.

Por los fundamentos que anteceden, se revoca la resolución del entonces Tribunal de Circuito de Apelaciones que desestimó el recurso de apelación de la peticionaria y se devuelve el caso a dicho foro para que le conceda un término razonable a la peticionaria para presentar los sellos de rentas internas correspondientes. De ésta incumplir con dicho término el foro apelativo intermedio tomará las medidas que estime correspondan, incluyendo, la desestimación del recurso.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gran Vista I, Inc.

   Demandante-Recurrida

      vi.

Minerva Gutiérrez Santiago;        CC-2003-387
John Doe ambos por sí y en.
representación de la S/L/G
constituída entre ellos

   Demandada-Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 2 de febrero de 2007

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la resolución del entonces Tribunal de Circuito de Apelaciones que desestimó el recurso de apelación de la peticionaria y se devuelve el caso a dicho foro para que le conceda un término razonable a la peticionaria para presentar los sellos de rentas internas correspondientes. De ésta incumplir con dicho término el foro apelativo intermedio tomará las medidas que estime correspondan, incluyendo, la desestimación del recurso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo